NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TAMMY FLETCHER,<br><br>          Plaintiff,<br><br>v.<br><br>ST. JOSEPH REGIONAL MEDICAL CENTER, et al.,<br><br>          Defendants. | Civil Action No.: 10-1499 (JLL)<br><br><br><br>OPINION |

**LINARES**, District Judge.

This matter comes before the Court by way of a motion for reconsideration and/or amended or additional findings by the United States of America ("Defendant," the "Government," or "United States"). (CM/ECF No. 110). Plaintiff Tammy Fletcher Willis ("Plaintiff" or "Mrs. Willis")[1] opposed the motion. (CM/ECF No. 112). No oral argument was heard pursuant to Federal Rule of Civil Procedure 78. The United States argues that it is entitled to a reduction of the verdict because the Court awarded to Plaintiff an excessive amount and Plaintiff received a double recovery. Having considered the arguments made in support of and in opposition to the instant motion, the Government's motion is DENIED.

---

[1] As mentioned in the Court's previous Opinion, Plaintiff was married and changed her name to Tammy Willis during the pendency of this case. Accordingly, while the Court will refer to Plaintiff by her married name, the transcript and documentary evidence refer to her by both names.

## I.     BACKGROUND

This action arises from the negligent failure of Dr. Karen York-Mui Yung ("Dr. Yung") to diagnose Plaintiff's breast cancer. The Court will not set forth the underlying facts except as relevant because it has already done so and presently writes only for the parties.

Plaintiff settled her claims against as to all defendants except the Government in advance of trial and informed the Court of same on the day that jury selection was scheduled to begin. The Court ruled that the Government could not use the expert report and deposition of Dr. Rebecca Zuurbier, an expert retained by Plaintiff in connection with this matter. After considering and assessing the credibility of the witnesses and documentary evidence, the Court made the following relevant findings of fact.

Plaintiff presented to the Patterson Community Health Center in Patterson, New Jersey, and was seen by Dr. Yung on December 17, 2002. (CM/ECF No. 106, ¶ 1) (hereafter "Opinion"). During that visit, Dr. Yung conducted a breast exam but did not feel any masses. However, she also palpated a uterine fibroid. (Opinion ¶ 2). Dr. Yung referred Plaintiff to a gynecologist for the fibroid and also for a screening mammogram. (Opinion ¶ 2).

Plaintiff obtained the prescribed screening mammogram on or about January 21, 2003, which was intended as a baseline study. (Opinion ¶ 3). The result was negative, but the study indicated that Mrs. Willis had very dense breasts and, as a result, the sensitivity of that test was limited, in part, because dense breasts can obscure a neoplasm, or tumor. (Opinion ¶ 3). The report recommended that Plaintiff obtain yearly mammograms, and Dr. Yung was aware that Plaintiff needed yearly mammograms as well. (Opinion ¶ 3).

Thereafter, Mrs. Willis presented to St. Josephs Regional Medical Center ("St. Joseph's") and, on March 7, 2005, she obtained a bilateral screening mammogram. (Opinion ¶ 4). Based on the results of that study, Mrs. Willis obtained diagnostic studies which revealed "no radiographic evidence of malignancy," but indicated that annual mammography was recommended. (Opinion ¶ 4).

Plaintiff visited Dr. Yung two additional times, once in 2006 and once in 2007, during which the negligence occurred. Both times, Plaintiff complained of a lump in her right axilla, or underarm, as well as pain on her right side. (Opinion ¶ 5). On August 9, 2006, Plaintiff presented to the clinic requesting a mammogram and complaining of irregular menses, right side pain and a lump in her axilla or underarm. (Opinion ¶ 7). Dr. Yung's notes from the visits did not reflect those symptoms despite the facts that Plaintiff presented requesting a mammogram and that Dr. Yung testified that upon hearing the Plaintiff's clinical symptoms, breast cancer immediately came to mind. (Opinion ¶¶ 7-8). Nor did Dr. Yung prescribe a mammogram for Plaintiff. (Opinion ¶ 8). Rather, Dr. Yung prescribed an antibiotic for what she believed was a boil and referred Plaintiff to a gynecologist for the benign uterine fibroid. (Opinion ¶¶ 8-10). Dr. Yung completed a breast exam, although it was not recorded, and could not feel a lump. (Opinion ¶ 11). Dr. Yung informed Plaintiff that if there was in fact a lump, it was a swollen lymph node which would go away with the prescribed antibiotic. (Opinion ¶¶ 11, 16). However, Dr. Yung did not develop a follow up plan with Plaintiff regarding the pain and lump or otherwise inform her that if those symptoms persisted, she needed to seek additional medical attention. (Opinion ¶ 8). Instead, Dr. Yung only discussed follow up with regard to the boil. (Opinion ¶ 16).

As per the credible expert testimony of Dr. Paul Genecin, the Court found that Dr. Yung deviated from the appropriate standard of care during the 2006 and 2007 visits. Both times Dr. Yung failed to document Plaintiff's symptoms and patient history. (Opinion ¶ 6). In addition, Dr. Yung deviated from the standard of care in 2006 by not ordering a mammogram, specifically a diagnostic study, in light of Plaintiff's symptoms and her age at the time. (Opinion ¶ 14).[2] Even the Government's own expert conceded that Dr. Yung deviated from the standard of care by not developing a plan to follow up with Plaintiff or otherwise informing her that she should seek medical attention if the pain and lump did not subside. (Opinion ¶ 15).

The second visit during which Dr. Yung committed medical malpractice occurred on June 19, 2007. (Opinion ¶ 19). Plaintiff presented with pain in her right side and a lump in her right axilla once more. Dr. Yung referred Plaintiff for a screening mammogram, which Plaintiff obtained on August 15, 2007. (Opinion ¶ 19). Dr. Yung also referred Plaintiff to a gynecologist for the benign uterine fibroid and prescribed a cream. (Opinion ¶ 19). Once again, the record of the visit did not contain information regarding a breast exam or an adequate history of the lump and pain. (Opinion ¶ 19). Although the record of the visit did not indicate that Dr. Yung performed a breast exam, the Court found that one was in fact done. (Opinion ¶ 20). The Court found that the applicable standard of care required diagnostic studies, not a screening mammogram, based upon the clinical problems of which Plaintiff was complaining and her age at the time. (Opinion ¶ 22). The Court also noted that was particularly the case "because Plaintiff presented with the same symptoms the previous year, and because Dr. Yung had

---

[2] For the sake of completeness, the Court notes that it previously found that "The standard of care required that Dr. Yung order at least a screening mammogram at that time. To the extent that the screening mammogram raised any questions, follow up tests should have been ordered in light of Plaintiff's clinical presentation." (Opinion ¶ 18).

knowledge that Plaintiff had dense breasts." (Opinion ¶ 22). The result of the screening mammogram indicated that there was no evidence of neoplasia, but that there were a "couple of fairly prominent nodes in the right axilla," the precise area where Plaintiff had been complaining to Dr. Yung of a lump for almost one year. (Opinion ¶ 23). The Court found that the standard of care required Dr. Yung to order a diagnostic study in light of that fact. (Opinion ¶ 24). The standard of care also required Dr. Yung to formulate a follow up plan or otherwise monitor the patient in light of her clinical symptoms and age. (Opinion ¶ 24).

Thereafter, in 2008, Plaintiff obtained medical treatment in Delaware, where upon completion of the appropriate diagnostic tests, Plaintiff was informed that she had Advanced Stage III AB cancer. (Opinion ¶ 25). Thereafter, Mrs. Willis required significant treatment, including a mastectomy. The Court detailed the treatment and reconstructive surgeries that Plaintiff underwent in its previous Opinion. (Opinion ¶¶ 26, 27). The credible expert testimony of Dr. Richard Hirschman established that had Plaintiff been timely diagnosed in 2006, she would not have needed a mastectomy. (Opinion ¶ 26).

Dr. Hirschman's credible expert testimony also established that if Plaintiff had been timely diagnosed in 2006, she would have had a projected rate of survival of 87.4 percent over a ten-year period. (Opinion ¶ 28). If a diagnostic workup had been done in 2007, Plaintiff's ten-year survival rate would have been 72 percent. (Opinion ¶ 29). Plaintiff's expert credibly testified that due to the approximately twenty-one month delay in diagnosis, Plaintiff's survival rate over a period of ten-years is now zero. (Opinion ¶¶ 31, 36).[3]

---

[3] As further detailed in the Court's previous Opinion, Plaintiff went into remission, but the cancer subsequently returned. She now has full body skeletal cancer for which there is no known cure. (Opinion ¶ 36). The Court also extensively discussed its factual findings as to Mrs. Willis's pain

## II. LEGAL STANDARD

The United States moves under Federal Rules of Civil Procedure 52(b) and 59(e) for the Court to reconsider its findings and judgment and reduce the verdict in favor of Plaintiff accordingly. Local Civil Rule 7.1(i) governs motions for reconsideration and requires, in relevant part that the moving party submit a "brief setting forth the matter or controlling decisions which the party believes the Judge or Magistrate has overlooked." "Reconsideration is an extraordinary remedy" and should be "granted 'very sparingly.'" *See* L. Civ. R. 7.1(i) cmt. 6(d); *see also Fellenz v. Lombard Inv. Corp.*, 400 F. Supp. 2d 681, 683 (D.N.J. 2005). Moreover, a motion for reconsideration may not be used to re-litigate old matters or argue new matters that could have been raised before the original decision was reached. *See, e.g., P. Schoenfeld Asset Mgmt., L.L.C. v. Cendant Corp.*, 161 F. Supp. 2d 349, 352 (D.N.J. 2001). "The word 'overlooked' is the dominant term, meaning that except in cases where there is a need to correct a clear error or manifest injustice, '[o]nly dispositive factual matters and controlling decisions of law which were presented to the court but not considered on the original motion may be the subject of a motion for reconsideration." *Leja v. Schmidt Mfg., Inc.*, 743 F. Supp. 2d 444, 456 (D.N.J. 2010) (citation omitted).

Federal Rule of Civil Procedure 59(e) states that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." As held by the Third Circuit, the scope of a motion for reconsideration is "extremely limited" and may not "be used as an opportunity to relitigate the case." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011). "Accordingly, a judgment may be altered or amended only if the party seeking

---

and suffering due to her condition. As a result of her condition, Plaintiff has also been precluded from gainful employment. (Opinion ¶ 40).

reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available . . .; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Blystone*, 664 F.3d at 415 (citing *Howard Hess Dental Labs., Inc. v. Dentsply Int'l Inc.*, 602 F.3d 237, 251 (3d Cir. 2010) (alteration supplied)); *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).  As Defendant does not point to new evidence or an intervening change of controlling law, the Court may only grant the motion if the Government demonstrates the need to correct a clear error of law or fact or to prevent manifest injustice.

Defendant also moves for new findings under Federal Rule of Civil Procedure 52(b). Rule 52(b) provides that "[o]n a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings--or make additional findings--and may amend the judgment accordingly. The motion may accompany a motion for a new trial under Rule 59."  As explained by the Third Circuit, this rule allows "the court to correct plain errors of law or fact, or in limited situations, allows the parties to present newly discovered evidence." *Gutierrez v. Johnson & Johnson*, 743 F. Supp. 2d 418, 422 (D.N.J. 2010) (quoting *Moss v. Potter*, No. 07-2779, 2007 WL 2900551, at *2 n.2 (3d Cir. 2007) and citing *Guttierez v. Gonzales*, 125 Fed. App'x. 406 (3d Cir. 2005)).  "Rule 52(b) is permissive, not mandatory." *Id.*

### III. DISCUSSION

The Government argues that the Court erred in three ways, which permitted the Plaintiff to receive "and excessive and/or double recovery": (1) the Court should have apportioned

damages based on the lost chance of survival calculations offered by Plaintiff's expert; (2) the Government should have been permitted to use Plaintiff's expert report and deposition to prove the settling defendants' *pro rata* share of damages; and (3) the Court did not take into account the alleged comparative negligence of Plaintiff.

In opposition to the instant motion, Plaintiff argues that

> [t]he issues before the Court were previously briefed by the parties at the Court's request and Defendant's Motion is nothing more than a reiteration of its prior arguments using the same case law that was already considered by the Court. Dissatisfied with the result of trial, Defendant attempts to have the Court reverse its legally sound and appropriate rulings. Defendant fails to meet its high burden for reconsideration and its Motion should be denied in its entirety as these issues were accurately decided by the Court based upon an extensive review of the pertinent law and evidence presented at trial.

(Pl.'s Br. 1). The Court will address each of Defendant's arguments below.

### A. Apportionment of Damages

Defendant first argues that the Court improperly ruled that Defendant was not entitled to apportionment of damages under *Scafidi v. Seiler*, 119 N.J. 93 (1990). Specifically, "Defendant urges the Court to revisit its determination that defendant failed to 'adduce sufficient proof to allow the court to determine the value of the lost chance of survival attributable to Dr. Yung's negligence [.]'" (Def.'s Br. 5) (alteration in original). "Defendant seeks reexamination of this conclusion by the Court because uncontested proof of Plaintiff's preexisting condition *was*, in fact, submitted at trial by Plaintiff's own oncologist, Dr. Hirschman." (Def.'s Br. 3) (emphasis in original). Defendant points to the testimony of Dr. Hirschman regarding Plaintiff's projected rate of survival over a ten-year period.

> [T]here is clearly straightforward and uncontested evidence in the record sufficient to justify a reduction of Plaintiff's damages award based upon a proper lost chance analysis pursuant to *Scafidi*. Surely, at a very minimum, the overall damage award to Plaintiff must be reduced by 12.6%, which represents Dr.

> Hirschman's uncontested figure for Plaintiff's projected ten-year survival when she presented to Dr. Yung in August of 2006 and when Dr. Yung *first* had any chance whatsoever to take steps that might lead to a diagnosis of cancer. Plainly, to hold the defendant liable for the Plaintiff's lost chance of 12.6% as of August of 2006 – again, as identified unequivocally at trial by Dr. Hirschman – would be unfair because Dr. Yung would have had no ability whatsoever to affect that percentage no matter what she had done for the Plaintiff.

(Def.'s Br. 5). Defendant additionally urges the Court to consider a more substantial reduction under *Scafidi* because "based on the *Scafidi* formula, damages must properly be apportioned based on Plaintiff's chances of survival in 2006 (87.4% ten-year survival rate) less the chance of survival in 2008 (49.4%) when the diagnosis was made, not based on the chance of survival in 2013 (0%)." (Def.'s Br. 6).

In response, Plaintiff argues that "Defendant presented no evidence entitling them to apportionment of damages because Defendant failed to fulfill its burden of producing evidence that Plaintiff's extensive damages were the result of a preexisting condition, rather than Dr. Yung's negligence." (Pl.'s Opp'n. 1). Further, "[a]t trial, Defendant failed to introduce *any* evidence regarding which portion of Plaintiff's multitude of injuries were due solely to a preexistent condition versus those that were due to Dr. Yung's negligence." (Pl.'s Opp'n. 8) (emphasis in original). Plaintiff argues that Defendant does not point to anything that the Court "overlooked," as it fails to cite any new case in support of its argument and only cites a single law review article, which is not binding on this Court. (Pl.'s Opp'n. 8). In support of her argument, Plaintiff also points to New Jersey's Model Jury Charge relating to preexisting conditions and proximate cause. (Pl.'s Opp'n. 9-10). Notably, Plaintiff also points out that Defendant seeks a reduction in total damages, *i.e.* economic and non-economic damages, but only argues that the Court erred with regard to Plaintiff's lost chance of survival. (Pl.'s Opp'n.

10). Separate and apart from economic damages, "[a] lost chance of ten-year survival for Mrs. Willis is only a single facet of the drastic non-economic damages she has suffered, which include her mastectomy, multiple surgeries, spread of her cancer to the bones, that has resulted in immense pain and suffering. . . Defendant's Brief fails to mention these damages, which were indisputably, 100% caused by Defendant's negligence." (Pl.'s Opp'n. 11-12).

Indeed, the Government cites no authority which would support a reduction of total damages and does not address any other type of damages in its brief, which the Court found to be fully substantiated by the evidence. Nor does the United States demonstrate that reconsideration is appropriate with regard to lost chance of survival damages under *Scafidi*. Defendant argues that it is entitled to apportionment based on the expert testimony of Dr. Hirschman that if Plaintiff had been diagnosed in 2006, she would have had an 87.4% chance of survival over a period of ten years. As explained in the Court's previous Opinion, the New Jersey Supreme Court has explained that "'the passage of time' with concomitant '[d]elay in treatment almost invariably results in a more serious prognosis.'" *Verdicchio v. Ricca*, 179 N.J. 1, 32 (2004) (quoting *Evers v. Dollinger*, 95 N.J. 399, 409 n.4 (1984)) (alteration in original); *see also* Tr. 2.104: 14-16 (Dr. Hirschman testified that "[e]arly diagnosis is the key to cure. The earlier you diagnose breast cancer, the more likely it is that the treatment will be curative."); *see also Okulicz v. DeGraff*, 361 N.J. Super. 320, 330 (App. Div. 2003) ("In the instance of a pre-existing cancer, it is commonly known that delay in treatment almost invariably leads to an increased risk of serious prognosis."). As noted in the Court's previous Opinion, "there was no evidence introduced at trial which would contradict or otherwise call into question Dr. Hirschman's credible testimony that *as a result of the delay in diagnosis*, Plaintiff's survival rate over a ten-

year period is now zero." (Opinion at 24) (emphasis in original). Defendant overlooks that this testimony relates to Mrs. Willis and her specific condition, which credible testimony established was due to the delay in diagnosis. The percentages derived from the program, Adjuvant Online, used by Dr. Hirschman to reach the hypothetical questions of Mrs. Willis's likelihood of survival over a ten-year period at a given time provide a reliable likelihood of survival for the *average* patient suffering from similar disease and symptoms. However, Dr. Hirschman testified that due to the delay in diagnosis in this case, this *particular* patient, Mrs. Willis, has a 0% chance of survival. The Government did not present any evidence which would call into question that determination. Simply put, under the applicable case law, the Government had the burden of demonstrating that apportionment was appropriate in light of Plaintiff's preexisting condition. *Scafidi*, 119 N.J. at 110, 113-14; *Verdicchio v. Ricca*, 179 N.J. at 37. As the United States did not meet that burden, it is not entitled to apportionment of damages. *Scafidi*, 119 N.J. at 113-14; *Fosgate v. Corono*, 66 N.J. 268, 272-73 (1974).

### B. Plaintiff's Expert Report and Deposition

Defendant next argues that the Court erred by ruling that it could not allow the use of the curriculum vitae, deposition, and expert report of Plaintiff's expert, Dr. Rebecca Zuurbier, to prove the liability of the settling defendants. As discussed above, Plaintiff did not call Dr. Zuurbrier at trial. Defendant recapitulates the arguments made in its post-trial brief and primarily relies on the same authority, *Young v. Latta*, 589 A.2d 1020 (N.J. 1990). (Def.'s Mot. 7-11). The Government also argues that Plaintiff "effectively waived any objection to the use of Dr. Zuurbier's deposition, report, and curriculum vitae because Plaintiff listed them as her own Exhibits . . . in the Amended Pretrial Order." (Def.'s Mot. 12). Defendant also states that it

"adopted Plaintiff's exhibits as its own, listing specifically in its Exhibit List in the Amended Pretrial Order, '[a]ny and all exhibits identified by any of the parties in the pretrial order in their pre-trial memoranda.'" (Def.'s Mot. 12). Unsurprisingly, Defendant cites no authority for the proposition that either is sufficient to permit the use the deposition testimony, curriculum vitae, and expert report of an expert retained by an adversary but not called at trial to prove liability. Finally, the Government attempts to distinguish the case relied on and discussed in the Court's previous Opinion, *Genovese v. NJ Transit Rail Operations*, 234 N.J. Super 375, 381-82 (App. Div. 1989), *cert. denied* 188 N.J. 195 (1989).

In Opposition, Plaintiff argues that "the law in New Jersey is well-established regarding the ability to use an adversary's expert opinion at trial and the Court appropriately precluded Defendant's affirmative use of Plaintiff's expert radiologist's deposition testimony and report. Defendant had the opportunity to retain an expert radiologist to testify at trial, but made a strategic decision not to do so." (Pl.'s Opp'n. 2). Plaintiff also states that "Defendant has not and cannot provide a single case or factual basis to demonstrate the Court's decision precluding use of Plaintiff's radiology expert's deposition and expert report was a clear error of law or resulted in a manifest injustice." (Pl.'s Opp'n. 2). In addition, Mrs. Willis argues that Defendant does not demonstrate manifest injustice:

> no manifest injustice occurred as a result of the Court's ruling. Defendant was on notice of the claims against the radiologist from the inception of the case and even asserted a cross-claim again the radiologist alleging responsibility for Plaintiff's injuries. Defendant certainly knew, and was aware of the possibility of settlement with co-defendants at any point in the litigation and needed to obtain its own expert to pursue a claim for a set-off at trial. Defendant made the strategic decision not to obtain an expert radiologist in support of its cross-claim, for whatever reason, and the law of New Jersey forbids its last-minute attempt to compel or "piggy-back" plaintiff's expert's opinions. In fact, it would have been to the immense prejudice of Plaintiff if Defendant was permitted at the eleventh

>hour to use Plaintiff's own expert's opinion and report (whom Plaintiff did not
>call at trial) to assert liability against a settling third-party.

(Pl.'s Opp'n. 17). In addition, Plaintiff argues that Dr. Zuurbier's expert report is hearsay which does not fall into any hearsay objection.

The Court agrees with the Government that generally a non-settling defendant has the right to have a settling defendant's liability apportioned if the non-settling defendant provides the plaintiff "'with fair and timely notice' of the intent to pursue a credit" and the non-settling defendant proves liability. (Opinion 25) (quoting *Verni ex rel Burstein v. Harry M. Stevens, Inc.*, 387 N.J. Super 160, 209 (App. Div. 2006) (citing *Young v. Latta*, 123 N.J. 584, 587 (1991); *Green v. Gen. Motors Corp.*, 310 N.J. Super. 507, 546 (App. Div.), *certif. denied*, 156 N.J. 381 (1998)).[4] The Court does not agree, however, that a non-settling defendant may use the deposition testimony and expert report of an adversary over objection to prove the liability of the settling defendant. As discussed above, a motion for reconsideration is not a vehicle through which a party may relitigate its case and mere disagreement with the Court's decision will not suffice. *Leja*, 743 F. Supp. 2d at 456; *P. Schoenfeld Asset Mgmt.,* LLC, 161 F. Supp. 2d at 353. Defendant falls far short of demonstrating that the Court's previous Opinion suffers from clear error or that there is a need to prevent manifest injustice.

---

[4] As previously stated by the Court,

>"[i]n order to obtain a credit, the "non-settling defendants must provide plaintiffs 'with fair and timely notice' of the intent to pursue a credit, and must prove liability." *Verni ex rel Burstein v. Harry M. Stevens, Inc.*, 387 N.J. Super 160, 209 (App. Div. 2006) (citing *Young v. Latta*, 123 N.J. 584, 587 (1991); *Green*, 310 N.J. Super. at 546)). "If no issue of fact is properly presented as to the liability of the settling defendant, the fact finder cannot be asked . . . to assess any proportionate liability against the settler." *Green*, 310 N.J. Super at 546 (quoting *Young v. Latta*, 223 N.J. Super. 520, 536 (App. Div. 1989)).

(Opinion 25).

### C. Comparative Negligence

The Government next argues that "[t]he Court should consider the issue of [P]laintiff's potential comparative negligence and should make a ruling thereon." (Def.'s Br. 16). In this regard, Defendant submits as follows:

> Testimony was adduced at trial from the plaintiff that plaintiff was aware that she was to have mammograms every year and that the lump in her axilla continued to bother her from August of 2006, when she first saw Dr. Yung, until June of 2007 (when she next saw Dr. Yung) and beyond. It is arguable that these delays were unreasonable and that plaintiff should have taken steps to follow up on her own complaints.

(Def.'s Br. 17). Notably, Defendant cites no authority which indicates that Mrs. Willis was contributorily negligent. Plaintiff responds by arguing that Defendant failed to meet its burden to prove negligence or unreasonable conduct sufficient to establish a reduction of damages. (Pl.'s Opp'n. 19).

As discussed more fully in the Court's previous Opinion, the Court found that Dr. Yung was negligent with regard to her recordkeeping, recommendations, orders, and failure to develop a follow up plan. As the factual findings reflect, no evidence was introduced at trial which would suggest that the extent of injuries suffered by Mrs. Willis was due to anything other than the fact that she was a victim of Dr. Yung's numerous deviations from the standard of care in both 2006 and 2007. Defendant suggests that Plaintiff was contributorily negligent because she was aware that she needed yearly mammograms. However, as indicated by the Court's previous findings, Plaintiff saw Dr. Yung in August of 2006 and June 2007 and requested mammograms each time. To the extent that the Government contends that Plaintiff was contributorily negligent for following the advice of her treating physician, the Court declines to make such a finding. Further, as indicated by the Court's previous findings of fact, Dr. Yung did not indicate to

Plaintiff that she should follow up regarding the lump in her axilla or pain in her side at all.  In light of the testimony and documentary evidence presented in this case, the Court denies Defendant's motion in this regard.

### III.     CONCLUSION

For the reasons stated above, the Court finds reconsideration inappropriate with respect to: (1) apportionment of damages; and (2) the Court's ruling prohibiting the use of the curriculum vitae, deposition, and report of an expert retained by Plaintiff, but not called at trial, to prove the liability of the settling defendants over Plaintiff's objection.  In addition, the Court denies Defendant's request that the Court issue additional findings with regard to contributory negligence.  Accordingly, the Court denies the Government's motion in full.

An appropriate Order accompanies this Opinion.


Dated:  6/19/2013                                                         __s/ Jose L. Linares_____
                                                                                       Jose L. Linares
                                                                                       United States District Judge